UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| NEAL HOYME, | ) | CIV. 08-5086-JLV |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | PLAINTIFF'S MOTION TO COMPEL |
| ALLIED PROPERTY AND | ) | |
| CASUALTY INS. CO., | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiff Neal Hoyme seeks an order compelling discovery to his first set
of interrogatories and first requests for production. [Docket No. 22].
Defendant Allied Property and Casualty Insurance Co. (hereinafter "Allied")
opposes the motion. [Docket No. 27]. The motion was referred to this
magistrate judge for resolution by the Honorable Jeffrey L. Viken, United States
District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A). [Docket No. 35]. As
discussed in further detail below, Mr. Hoyme's motion to compel is granted.

**FACTS**

The facts, insofar as they are pertinent to the present motion, are as
follows. On June 13, 2002, Mr. Hoyme was involved in a motor vehicle
accident while driving a truck for his employer, Mac's Contracting. Mr. Hoyme
was ejected from the dump truck he was driving and sustained injuries to his
shoulders. At the time of Mr. Hoyme's accident, Allied provided workers'

compensation insurance coverage to Mac's Contracting.  Over a period of

months, Mr. Hoyme sought various treatments for his injuries from several

different medical professionals.  The parties disagreed as to whether Allied was

obligated to compensate Mr. Hoyme for medical bills incurred while he sought

treatment for his injuries, and Mr. Hoyme ultimately brought the present

action against Allied in Pennington County, South Dakota, on October 14,

2008.  In his complaint, Mr. Hoyme alleges bad faith, intentional infliction of

emotional distress, and vexatious refusal to pay on the part of Allied.  On

November 14, 2008, Allied removed the case from circuit court to this federal

court.  <u>See</u> Docket No. 1.

Mr. Hoyme served Allied with discovery requests on June 4, 2009.  Allied

provided partial responses and its objections on September 3, 2009.  <u>See</u>

Docket Nos. 23-1, 23-2.  Mr. Hoyme asserts that Allied has not provided

complete responses to certain of his discovery requests and has yet to produce

the information sought in others.  Docket Nos. 24, 32.  Allied argues that it has

fully complied with discovery as to Mr. Hoyme's interrogatory number 4, and

that the remaining discovery requests seek information that is privileged,

irrelevant to the claim at issue, and unlikely to lead to the discovery of

admissible evidence.  Docket No. 27, at page 1.

**DISCUSSION**

**A.    Good Faith Certification**

Pursuant to D.S.D. Local Rule 37.1 and Fed. R. Civ. P. 37, Mr. Hoyme certifies that he contacted Allied prior to filing the instant motion to compel and attempted in good faith to resolve the parties' discovery disputes.  Allied does not challenge this.  Thus, the court finds that the good faith requirements of Local Rule 37.1 and Federal Rule 37 have been met.

**B.    Interrogatory Requests**

**1.    Interrogatory No. 4: Medical Bills Denied**

Mr. Hoyme's fourth interrogatory requested that Allied:

List with specificity all medical bills presented by or on behalf of Plaintiff that you denied for any reason, and for each such denial, state:
    a. The name of each person involved in denying each bill;
    b. The basis for each such denial;
    c. Each and every fact you relied upon in determining to withhold payment of any portion of Plaintiffs claim.  For each such fact:
        i. Identify each person who possesses knowledge relating to that fact;
        ii. Identify each writing relating to each fact;
        iii. Identify the present custodian of any writing;
        iv. The date that you became aware of each fact;
        v. The means by which you became aware of such fact.

Docket No. 24.

In response, Allied apparently issued some 3500 pages and "refer[red] to the claims file as reflecting its decisions on medical payments and reasoning underlying those decisions."  Docket No. 23-2, at page 3.  Allied insists that it

has fully complied with this interrogatory, in that the pages it produced "reflect the medical bills received by Allied and the action taken thereon," as well as "any reasoning underlying the actions taken on [Mr. Hoyme's] medical bills." Docket No. 27, at page 7.

However, it is unclear whether all or some of the 3500 pages Allied produced constitutes the claims file. Allied did not list the medical bills it denied which were presented by or on behalf of Mr. Hoyme, did not name the persons responsible for denying the bills, did not explain the basis for any denials, and mentioned none of the facts upon which it relied in denying payment of the bills, nor any information relating to those facts. Instead, Allied produced thousands of pages and provided a vague answer that included literally none of the information sought, but would require Mr. Hoyme to sift through the pages and speculate as to what information contained therein is responsive to his request. Allied states that Mr. Hoyme is "free to examine and utilize that information to prove his case as he sees fit." Docket No. 27, at pages 7-8. However, the court believes Allied's response to this interrogatory is wholly incomplete, and directs Allied to fully respond to each of the sections and subsections delineated in Mr. Hoyme's fourth interrogatory.

## C. Production Requests

### 1. RFP No. 4: Personnel Files

Mr. Hoyme's fourth request for production asked Allied to produce:

> Copies of all personnel files of each person who handled, reviewed, supervised, and/or audited the Plaintiffs claim with Defendant, including all persons in the chain of command above these individuals up to the heads of the claims department. In order to protect the privacy of the affected employees, Plaintiff agrees that none of these documents shall be used for any purpose outside this lawsuit or disseminated in any way or made available to the public without redacting the names and other identifying information pertaining to the employees.

Docket No. 24. Allied objected to this request on grounds that it is overly broad, unduly burdensome, unlikely to lead to the discovery of admissible evidence, and subject to the attorney-client or work product privileges. Id. The court will address each of Allied's objections in turn.

### a.    Overbreadth

While "a document request may be overly broad on its face if it uses an omnibus term such as 'relating to,' 'pertaining to,' or 'concerning,' " if "the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents, the request will not be deemed objectionable on its face." <u>U nited States Fire Ins. Co. v. Bunge North America, Inc.</u>, 2007 WL 1531846, at *7 (D. Kan. May 25, 2007). Here, Mr. Hoyme requests copies of personnel files of six employees of Allied, whom Allied itself named as persons involved in handling Mr. Hoyme's claim:  Karen Burbacher, Mark Clymer, Cheri Lenhoff,

Dorothy M. Pfrimmer, Michelle Pester, and Rebecca Davis.[1] As personnel files are themselves a sufficiently specific type of document, and Mr. Hoyme uses no vague or omnibus term with regard to the request, but merely seeks copies of precise documents, this court finds Mr. Hoyme's request for production number 4 to be neither vague nor overly broad.

It should be noted that both parties rely on <u>DeKnikker</u> to support their respective arguments as to the discoverability of personnel files. <u>DeKnikker v. General Cas.</u>, No. Civ. 07-4117, 2008 WL 1848144 (D.S.D. April 23, 2008). Allied makes the argument that personnel files should not be discoverable because of the potentially sensitive nature of the information contained therein. Docket No. 27, at page 6. Allied also argues that Mr. Hoyme has failed to demonstrate that the six employees were directly involved in handling his claim, and that Mr. Hoyme is required to meet a heightened burden to establish that (1) the material sought is clearly relevant, and (2) the need for discovery is compelling because the information is not otherwise readily obtainable. <u>Id.</u>, at page 7.

Conversely, Mr. Hoyme asserts that the six named employees whose personnel files he seeks were identified by Allied as being claims

---

[1]In Interrogatory number 2, Mr. Hoyme requested that Allied "identify all personnel of the Defendant who were involved in any way in the handling of the Plaintiff's claim for worker's compensation that is the subject of this lawsuit." Docket No. 32, page 5. In response, Allied provided the names of six employees, their respective positions with the company, and the respective tenure of each.

representatives and claims managers in various stages of promotion who handled his claim, and that Allied provided the precise date range during which each employee handled the claim. See Docket No. 32, at pages 5-6. Mr. Hoyme relies on DeKnikker because the court in that case found that personnel files of those employees who were directly involved in handling the claim at issue were discoverable. Id.

In DeKnikker, the district court held that personnel files of employees who were directly involved in the decisions and actions regarding the plaintiff's claim were discoverable, because "information contained in [the files] could be relevant to their motivation in making decisions about [the] plaintiff's claim." DeKnikker, 2008 WL 1848144, at *3. DeKnikker approved the discovery of personnel files of various claims managers who directly handled the claim at issue, but rejected the notion that personnel files of those employees whom the plaintiff had not represented were directly involved in handling her claim were discoverable. Id. at *2. While the defendant in DeKnikker argued that the court should adopt a two-part test to determine whether personnel files should be discoverable, the court did not expressly adopt the test or discuss its two prongs in holding that certain personnel files were discoverable while others were not. Id. at *2-3. Allied has not cited any authority by which this court is bound by the proposed two-part test, and the court does not adopt such a test with respect to the present matter.

Of additional significance to this matter is that DeKnikker emphasized the need to safeguard private information, and to limit the use and dissemination of the discovered information to those involved with the lawsuit. Id. at *3. Mr. Hoyme has agreed that a protective order redacting such information is appropriate, both in the text of his request for production and in the protective order entered into by the parties in this case. Docket Nos. 13, 24, at page 6. This court agrees that the personnel files of employees directly involved in handling Mr. Hoyme's claim are discoverable, yet should be subject to the safeguards stipulated to by the parties in the request for production and the protective order. See Docket No. 13.

Finally, the authority cited by Allied from various other district courts and Courts of Appeal is unpersuasive. None of the cases are controlling in this District, and none involve claims of insurance bad faith. See Docket No. 32, at pages 4-5. Accordingly, the court finds that the request for the personnel files of the six named employees is not overbroad, and that Mr. Hoyme is not required to satisfy a heightened standard for purposes of discovery.

### b.  Relevancy

For purposes of discovery, relevancy has been defined as "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Discovery requests should be considered relevant if

there is *any possibility* that the information sought is relevant to any issue in the case, and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action.  See Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 124 (M.D.N.C. 1989)(emphasis added)(stating "discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action"); Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland, 122 F.R.D. 447, 449 (S.D.N.Y 1988) (same).

In this case, Allied argues that Mr. Hoyme makes only a general showing of relevancy with regard to the personnel files sought, which showing "is insufficient to warrant broad discovery in a bad faith case."  Docket No. 27 (citing DeKnikker, 2008 WL 1848144, at *1-3).  Mr. Hoyme argues that DeKnikker did not establish any heightened standard to discover the requested information, that the cases Allied cites in support of its position are inapplicable here, and that the district court set aside the public policy argument in DeKnikker and ordered discovery.  See Docket No. 32.

This court finds illustrative a case from this District in which discovered personnel files indicated that an insurance company paid bonuses to those of its employees who helped reduce the previous year's claims payouts.  See Torres v. Travelers Ins. Co., Civ. 01-5056, Docket No. 327, at 29 (D.S.D. 2004).  In Torres, the discovery of personnel files went to the merits of the case, which

9

involved allegations of bad faith on the part of the insurance company, and the court considered the information contained in personnel files as part of an inquiry into the degree of reprehensibility of the defendant insurance company in expressly denying that it engaged in a claims incentive program.  Id. at 27.

In this case, Mr. Hoyme asserts that Allied acted in bad faith by refusing to compensate Mr. Hoyme for medical bills he incurred while insured by Allied; that Allied intentionally inflicted emotional distress upon Mr. Hoyme in that it knew its denial of benefits would result in serious emotional distress; and that Allied's denial of benefits was vexatious or without reasonable cause.  It cannot be said that personnel files of six employees who directly handled Mr. Hoyme's claim have no possible bearing on Mr. Hoyme's allegations.  Marker, 125 F.R.D. at 124.  Instead, as in Torres, the personnel files here could directly or indirectly demonstrate Allied's knowledge of a lack of reasonable basis for its denial of benefits and illustrate the reprehensibility of Allied's conduct for the purposes of punitive damages.  As such, the requested documents are relevant for purposes of discovery.

### c.     **Unduly Burdensome**

Several courts have determined that where discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise appropriate.  See In re Folding Carton Antitrust Litigation, 83 F.R.D.

260, 265 (N.D. Ill. 1979) (stating that "[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate' "); Alexander v. Parsons, 75 F.R.D. 536, 539 (W.D. Mich. 1977) (stating that "the mere fact discovery is burdensome . . . is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence"); Burns v. Imagine Films Entm't, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996) (determining that the fact that answering interrogatories will require the objecting party to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents and information is an insufficient basis for an objection). If discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable. See United States v. Nysco Labs., Inc., 26 F.R.D. 159, 161-62 (E.D.N.Y. 1960)and Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 245 (N.D. W. Va. 1970) (stating that "[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense").

Mr. Hoyme's request is limited to copies of the personnel files of only six employees. Docket No. 24. These documents are presumably neither burdensome nor expensive for Allied to produce, and this court has already

determined that the files are relevant.  See *infra* Part C.1.b.  Allied objected to this request on grounds that it is unduly burdensome, but makes no substantive argument in support of that point other than to assert that "strong public policy against disclosure of confidential information" weighs against discovery.  Docket No. 27.  Despite Allied's lack of argument in support of its assertion, the court will consider whether the request is in fact unduly burdensome.

The fact that Allied would have to make copies of personnel files, without more, is not enough to satisfy an objection that the request is unduly burdensome.  Mr. Hoyme's request is limited in scope to the six employees Allied itself named as persons having direct involvement with Mr. Hoyme's claim.  Docket No. 32.  Allied provided the precise tenure for each of the employees, so the temporal scope of the request is limited to reflect the employment period for each respective employee.  Moreover, Allied does not cite and the court is not aware of any binding authority that concludes that a review of files in order to redact personal or privileged information necessarily makes producing such documents an undue burden.  Thus, under the facts of this case, the fact that producing requested documents requires work and expense does not mean that such a request is unduly burdensome.  This court believes Allied's invocation of the unduly burdensome objection is without merit.

###### d.    Privilege

Allied references both the attorney-client privilege and the work product privilege in its response to request for production number 4, but makes no specific showing that any of the information in the personnel files sought actually falls under either privilege.  For purposes of completeness, however, the court will address both the attorney-client and work product privileges.

The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice.  In a diversity action, state law determines both the existence and scope of the attorney-client privilege.  Fed. R. Evid. 501; <u>Gray v. Bicknell</u>, 86 F.3d 1472, 1482 (8th Cir. 1996); <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938)("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

Four elements must be present to invoke the attorney-client privilege:  (1) a client; (2) a confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of the five relationships enumerated in S.D.C.L. §19-13-3.  <u>State v. Rickabaugh</u>, 361 N.W.2d 623, 624-25 (S.D. 1985)(quoting <u>State v. Catch The Bear</u>, 352 N.W.2d 640, 645 (S.D.1984)); S.D.C.L. § 19-13-3.  The party claiming the privilege carries the burden of establishing all of the essential elements.  <u>Id.</u>

The work product privilege is "distinct from and broader than the attorney-client privilege." In re Green Grand Jury Proceedings, 492 F.3d 976, 980 (8th Cir. 2007) (quoting In re Murphy, 560 F.2d 326, 337 (8th Cir. 1977)). While the purpose of the attorney-client privilege "is to encourage clients to make a full disclosure of all favorable and unfavorable facts to their legal counsel," Murphy, 560 F.2d at 337, the work product privilege "functions not merely and (perhaps) not mainly to assist the client in obtaining complete legal advice but in addition to establish a protected area in which the lawyer can prepare his case free from adversarial scrutiny." In re Special September 1978 Grand Jury (II), 640 F.2d 49, 62 (7th Cir. 1980). Because the work product privilege protects the attorney's thought processes and legal recommendations, both the attorney and the client hold the privilege. United States v. Under Seal (In re Grand Jury Proceedings # 5), 401 F.3d 247, 250 (4th Cir. 2005)(citation omitted); Genentech, Inc. v. U. S. Intern. Trade Com'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997)(internal quotation marks and citation omitted).

In a diversity case, such as this one, courts must "apply federal law to resolve work product claims." McElgunn v. Allied Mut. Group, No. 06-Civ-5061-KES, 2008 WL 5105453, at *1 (D.S.D. Dec. 2, 2008) (quoting Baker v. Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000)).

Rule 26(b) of the Federal Rules of Civil Procedure permits discovery of any matter "not privileged." Rule 26(b)(3) provides that documents "prepared

in anticipation of litigation or for trial by or for another party or by its representative" are discoverable only if the requesting party demonstrates a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." The rule further states that the court will "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3). To assess the presence of either the attorney-client privilege or the work product privilege, the court may order documents to be submitted for *in camera* review. Fed. R. Civ. P. 26(b)(5).

With the applicable Federal Rules in mind, the court now turns to the test adopted by the Eighth Circuit for determining whether documents were prepared in anticipation of litigation, and thus are subject to the work product privilege. The test is "a factual determination" which asks

> whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

Simon v. G. D. Searle & Co., 816 F.2d 397, 401 (8th Cir.1987). The Advisory Committee notes following Rule 26 indicate that "[m]aterials assembled in the ordinary course of business . . . or for other nonlitigation purposes" are not

subject to qualified immunity under the Rule. Fed. R. Civ. P. 26(b)(3) advisory committee's note.

With respect to request for production 4, Allied has not alleged any facts at all which would lead the court to accept the argument that information contained within the personnel files of the six named Allied employees are protected by the attorney-client privilege. Rule 26 requires that the party asserting either attorney-client privilege or work product privilege make a very detailed and specific showing:

> (A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See Fed. R. Civ. P. 26(b)(5)(A). Allied has not satisfied its burden under Rule 26 of making the showing required to uphold the claim of privilege.

Indeed, it is difficult to imagine any set of circumstances under which the entirety of an employee's personnel file would be subject to the attorney-client privilege. Accordingly, Allied has not carried its burden of proving each of the elements of the state statutory attorney-client privilege. See Rickabaugh, 361 N.W.2d at 624-25.

The court is similarly unable to determine whether information contained in the personnel files sought are covered by the work product privilege because Allied has merely asserted an objection on this ground without making the showing required under Rule 26(b)(5)(A). "In cases involving large numbers of documents or where the nature of the document will not likely be readily apparent on its face to the uninitiated observer, the proponent of work product protection must present *in camera* matter to the Court in a reviewable form such as in a 'Vaughn Index' which itemizes each document, provides a factual summary of its content and justification for withholding it." Delaney, Migdail & Young, Chartered v. I.R.S., 826 F.2d 124, 128 (D.C.Cir.1987); Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir. 1973), *cert denied*, 415 U.S. 977, 94 S.Ct. 1564 (1974). In the instant case, this was not done and, therefore, the court has no factual basis for concluding that any of the information requested by Mr. Hoyme would be subject to the work product privilege.

Accordingly, with regard to request for production number 4, Allied shall produce to opposing counsel copies of the personnel files of Karen Burbacher, Mark Clymer, Cheri Lenhoff, Dorothy M. Pfrimmer, Michelle Pester, and Rebecca Davis which have not already been produced.

In the alternative, as to any discrete documents within those personnel files that Allied has a *bona fide* claim of privilege, Allied shall produce to the court for *in camera* review those parts of the personnel files which it claims are

subject to the work product privilege.  Allied shall summarize, in factual and

not conclusory terms, the nature of the material withheld and shall link each

specific claim of privilege to specific material.  See Vaughn, 484 F.2d at 826-28.

The court will then assess whether the statutory work product privilege or

attorney-client privilege applies to the files and whether they are subject to

discovery.  Allied shall produce all documents described above, whether

directly to Mr. Hoyme, or to the court for *in camera* review, within 30 days from

the date of this order.

**2.    Request For Production No. 16: Documents Identifying Past Bad Faith Claims**

Mr. Hoyme requested any and all documents identifying "past litigation

involving claims of breach of contract or bad faith against the Defendant."

Docket No. 24.  Mr. Hoyme's request was limited in temporal scope from

January 1, 2002, to the present.  Id.  Allied objected generally to this request

on grounds that the information sought pertains to Allied's general business

practices, rather than to Mr. Hoyme's claim.  Docket No. 27.  Allied also argues

that DeKnikker obligates Mr. Hoyme to demonstrate that the information

sought is "directly connected" to his claim.  Docket No. 27; DeKnikker, 2008

WL 1848144, at *2.  Allied makes no argument that the documents sought are

overly broad, unduly burdensome, or privileged, nor does the court believe

such arguments would lie.  The documents sought are specific in nature, are

limited in scope, and are public in nature rather than privileged. Accordingly, this court construes Allied's objection to be on grounds of relevance.

This court addressed discovery of the much broader category of documents merely *relating* to prior litigation in <u>Beyer v. Medico</u>, Civ. 08-5058, Docket No. 32, at 11-12 (D.S.D. 2009). As this court explained, Rule 34 of the Federal Rules of Civil Procedure governs requests for the production of documents and provides that a party may ask another party to permit copying of documents "in the responding party's possession, custody, or control." <u>See</u> Fed. R. Civ. P. 34(a)(1). The court discussed the concept of documents in a party's "control" and stated the rule to have developed, which is that if a party "has the legal right to obtain the document," then the document is within that party's "control" and, thus, subject to production under Rule 34. <u>See</u> 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, §2210, at 397 (2d ed. 1994). "Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control." <u>American Soc. for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus</u>, 233 F.R.D. 209, 212 (D.D.C. 2006) (citing <u>Poole ex rel. Elliott v. Textron, Inc.</u>, 192 F.R.D. 494, 501 (D. Md. 2000); and <u>Poppino v. Jones Store Co.</u>, 1 F.R.D. 215, 219 (W.D. Mo. 1940)).

This court also discussed that the work product doctrine and the attorney-client privilege still may apply to documents in a party's control, and either may be asserted in opposition to discovery, along with the appropriate privilege log. Ringling Bros., 233 F.R.D. at 211-213. Here, however, Allied makes a broad objection as to privilege but fails to carry its burden to show that the information is in fact privileged. See Fed. R. Civ. P. 26(b)(5)(A). In any event, as stated above, the public nature of the documents requested makes clear that an objection on grounds of privilege cannot lie. Mr. Hoyme requests a mere listing of prior litigation against Allied involving bad faith or breach of contract. Docket No. 24. By the very nature of civil litigation, the names of parties involved in civil lawsuits are a matter of public record. Accordingly, the court grants Mr. Hoyme's request for an order compelling Allied to respond to request for production number 16. Allied shall provide any and all documents identifying past litigation involving claims of breach of contract or bad faith against Allied within 30 days of this court's order.

### 3.     Request For Production No. 17:  Bad Faith Transcripts

The previous discussion is equally applicable to Mr. Hoyme's request for, and Allied's objection to, "any and all transcripts of depositions or trial testimony of any of [Allied's] employees or officers since January 1, 2002, in any suit alleging fraud or bad faith." See Docket No. 24. Allied objected on grounds of overbreadth, undue burden, relevancy, and privilege, but provided

no argument in support of any of its objections aside from relevancy.  See

Docket No. 27.  The court finds that Mr. Hoyme's request is appropriately

limited in temporal scope from January 1, 2002 to the present, that the request

calls for a specific type of document that is readily obtainable by Allied, and

that any burden on Allied in producing the documents is not undue.

Additionally, as stated above, trial and deposition transcripts are

inherently non-privileged, as they are recordings of testimony given in public.

Moreover, the transcripts are relevant because they may lead to other

admissible evidence that would show Allied's knowledge that it acted recklessly

or with bad faith in denying benefits, which is a paramount consideration for

punitive damages.  See State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S.

408, 123 S.Ct. 1513, 1521 (2003) "The most important indicium of the

reasonableness of a punitive damages award is the degree of reprehensibility of

the defendant's conduct"); See Beyer, Civ. 08-5058, Docket No. 32, at 11-12

(D.S.D. 2009).

**4.     Request For Production  No. 21:  Loss Ratios Considered; Request For Production No. 24: Workers' Compensation Reports**

Mr. Hoyme's twenty-first request seeks "all documents which would

reflect that claims severity experience, or loss ratios, are taken into account in

any manner when evaluating the work performance of any of Defendant's

employees, agents, or officers who are in the chain of command anywhere

between the adjuster in charge of the subject claim up to the president of
Defendants, for the past 10 years." Docket No. 24 at page 9. Mr. Hoyme's
twenty-fourth request seeks any periodic reports generated by Allied with
respect to workers' compensation claims or workers' compensation payments.
Id. at page 10. Allied objected to both requests on the same grounds as the
previously-stated objections, but provided no argument other than to state that
the requested information related to Allied's general business practices rather
than to Mr. Hoyme's claim. See Docket No. 27. This court again construes
Allied's objection as one most closely related to grounds of relevancy.

The Eighth Circuit Court of Appeals considered whether an insurance
company's setting goals for reducing loss ratios constituted bad faith in BJC
Health System v. Columbia Cas. Co., 478 F.3d 908 (8th Cir. 2007). The court
noted that while a company does not act in bad faith where its acts
"incidentally lessen the other party's anticipated fruits from the contract," the
company is not permitted to act in such a way as to "scuttle the deal." BJC
Health, 478 F.3d at 915 (quoting Countrywide Services Corp. V. SIA Ins. Co.,
235 F.3d 390, 393 (8th Cir. 2000), and Venture Assoc. Corp. V. Zenith Data
Sys. Corp., 96 F.3d 175, 279 (7th Cir. 1996)). The court found that evidence
indicating that the insurance company used its discretion improperly to avoid
its obligations under the insurance contract was relevant and discoverable.
BJC Health, 478 F.3d at 914. In addition, the court said the insurance

company's "broader business motivations and goals" bore on how and for what purposes it employed its discretion, so evidence that it sought to shed medical malpractice clients for financial gain was relevant.  Id. at 915.

Here, Allied's loss ratio goals and workers' compensation reports are relevant to the question of whether Allied acted in bad faith.  If Allied's broader business motivations and goals encouraged its employees to deny claims recklessly or in bad faith, any evidence tending to demonstrate that fact is relevant and discoverable.  Accordingly, the court grants Mr. Hoyme's motion to compel as to request for production numbers 21 and 24.  The court orders Allied to produce documents responsive to both requests no later than December 31, 2009.

## CONCLUSION

Based on the foregoing discussion, it is hereby

ORDERED that plaintiff Neal Hoyme's motion to compel discovery [Docket No. 22] is granted.  Defendant Allied shall provide all documents responsive to Mr. Hoyme's Interrogatory number 4 and Requests for Production numbers 4, 16, 17, 21, and 24 as discussed above.  Allied shall produce the documents by December 31, 2009.  It is further

ORDERED that as to any documents for which Allied still wishes to assert a *bona fide* claim of privilege or work product, Allied must submit those

documents to this court for *in camera* inspection together with a <u>Vaughn</u> index as described *supra* no later than December 31, 2009.  It is further

ORDERED that defendant Allied's request for oral argument on plaintiff Neal Hoyme's motion to compel is denied.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  <u>See</u> Fed. R. Civ. P. 72(a).  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  <u>Id.</u>  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require review by the district court.

Dated December 1, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE